IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAMERON HOSPITAL ASSOCIATION,

         Plaintiff,                  No. CIV S-07-1818 GEB DAD

    v.

PREMERA BLUE CROSS, et al.,           ORDER AND

         Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

        This matter came before the court on February 6, 2009, for hearing of plaintiff's motions for default judgment against defendants David Martinez, Margaret Lee, Jayson Untalan, and Zarghoona Karimi.  (Doc. Nos. 314, 315, 317 & 318).  Gregory M. Hatton and John A. McMahon appeared on behalf of plaintiff.  No appearance was made by or for the defendants.

        Upon hearing argument, the court requested a written report concerning the status of defendants and a supplemental brief addressing specific matters.  Plaintiff filed a status report on February 10, 2009, and a supplemental brief on February 13, 2009, whereupon the four motions were submitted for decision.  After hearing oral argument and after considering all written materials submitted in connection with plaintiff's motions, for the reasons set forth below, the undersigned recommends that the motions be granted and that default judgment be entered against defendants Martinez, Lee, Untalan, and Karimi.

1

BACKGROUND

Plaintiff Dameron Hospital Association, a California non-profit association, is a hospital located in Stockton, California.  Defendants David Martinez, Margaret Lee, Jayson Untalan, and Zarghoona Karimi are patients who received hospital care at Dameron Hospital. Each defendant was treated as an "out of network" patient and, as such, each was responsible for satisfying all of the hospital's unpaid billed charges for hospital care rendered to him or her. Despite the fact that each defendant received payment of some amount from his or her health insurer for the hospital care rendered by Dameron Hospital, each defendant failed to remit any of those funds to Dameron Hospital and otherwise failed to pay his or her hospital bill.

Plaintiff initially brought this action against numerous corporate defendants for the purpose of collecting the unpaid hospital bills for services provided to more than twenty-five patients.  The case was filed in the San Joaquin County Superior Court on June 22, 2007, and was removed to the United States District Court for the Eastern District of California on August 31, 2007.  Removal was grounded on jurisdiction arising under ERISA.  By a First Amended Complaint filed on November 20, 2007 (Doc. No. 47), plaintiff joined additional defendants, including defendants David Martinez and Margaret Lee.  Pursuant to the parties' stipulation and the court's order filed April 11, 2008 , plaintiff filed a Second Amended Complaint on May 1, 2008 (Doc. No. 177).  Once again, new defendants were joined, including defendants Jason Untalan and Zarghoona Karimi.  As the litigation proceeded, plaintiff reached settlement agreements with many defendants and those defendants were voluntarily dismissed.  As of May 12, 2009, defendants Martinez, Lee, Untalan, and Karimi were the sole remaining defendants.

Although service of process was effected on defendants Martinez, Lee, Untalan, and Karimi, each defendant failed to appear in this action.  On October 27, 2008, plaintiff requested entry of default as to defendants Untalan and Karimi.  (Doc. Nos. 286 & 287.)  The Clerk entered default against defendants Untalan and Karimi on October 28, 2008.  (Doc. Nos. 288 & 289.)  On October 28, 2008, plaintiff requested entry of default as to defendants Lee and

1  Martinez.  (Doc. Nos. 291 & 292.)  The Clerk entered default against defendant Lee on October

2  29, 2008 (Doc. No. 294) and against defendant Martinez on October 30, 2008 (Doc. No. 296).

3  On December 31, 2008, plaintiff filed its motions for default judgment against defendants

4  Martinez, Lee, Untalan, and Karimi.  (Doc. Nos. 314, 315, 317 & 318.)  Each motion includes

5  proof of service on the defendant.

6  <u>LEGAL STANDARDS</u>

7  Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for

8  entry of default judgment.  Upon entry of default, the complaint's factual allegations regarding

9  liability are taken as true, while allegations regarding the amount of damages must be proven.

10  <u>Dundee Cement Co. v. Howard Pipe & Concrete Prods.</u>, 722 F.2d 1319, 1323 (7th Cir. 1983)

11  (citing <u>Pope v. United States</u>, 323 U.S. 1 (1944); <u>Geddes v. United Fin. Group</u>, 559 F.2d 557 (9th

12  Cir. 1977)); <u>see also</u> <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987).

13  Where damages are liquidated, i.e., capable of ascertainment from definite figures

14  contained in documentary evidence or in detailed affidavits, judgment by default may be entered

15  without a damages hearing.  <u>Dundee</u>, 722 F.2d at 1323.  Unliquidated and punitive damages,

16  however, require "proving up" at an evidentiary hearing or through other means.  <u>Dundee</u>, 722

17  F.2d at 1323-24; <u>see also</u> <u>James v. Frame</u>, 6 F.3d 307, 310-11 (5th Cir. 1993).

18  Granting or denying default judgment is within the court's sound discretion.

19  <u>Draper v. Coombs</u>, 792 F.2d 915, 924-25 (9th Cir. 1986).  The court is free to consider a variety

20  of factors in exercising its discretion.  <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

21  Among the factors that may be considered by the court are

22  (1) the possibility of prejudice to the plaintiff, (2) the merits of
plaintiff's substantive claim, (3) the sufficiency of the complaint,
23  (4) the sum of money at stake in the action; (5) the possibility of a
dispute concerning material facts; (6) whether the default was due
24  to excusable neglect, and (7) the strong policy underlying the
Federal Rules of Civil Procedure favoring decisions on the merits.

25

26  <u>Eitel</u>, 782 F.2d at 1471-72 (citing 6 <u>Moore's Federal Practice</u> ¶ 55-05[2], at 55-24 to 55-26).

<u>ANALYSIS</u>

I. <u>Whether Default Judgment Should Be Entered</u>

The factual allegations of plaintiff's second amended complaint, taken as true pursuant to the entry of defaults against defendants Martinez, Lee, Untalan, and Karimi, establish the following circumstances:  (1) defendant Martinez entered into a valid, enforceable, and binding written Conditions of Admission contract with plaintiff on December 1, 2005, was admitted to Dameron Hospital for medical care on December 2, 2005, was discharged on December 5, 2005, and incurred charges of $43,409, which is the outstanding balance on his account; (2) defendant Lee entered into a valid, enforceable, and binding written Conditions of Admission contract with plaintiff on July 24, 2007, was admitted to Dameron Hospital for medical care on July 25, 2007, was discharged on the same day, and incurred charges of $6,570, which is the outstanding balance on her account; (3) defendant Untalan entered into a valid, enforceable, and binding written Conditions of Admission contract with plaintiff on July 12, 2007, was admitted to Dameron Hospital for medical care on July 16, 2007, was discharged on the same day, and incurred charges of $36, 427, which is the outstanding balance on his account; (4) defendant Karimi entered into a valid, enforceable, and binding written Conditions of Admission contract with plaintiff on September 22, 2007, was admitted to Dameron Hospital for medical care on September 22, 2007, was discharged on September 24, 2007, incurred charges of $12,798, paid $598 to plaintiff, leaving an outstanding balance of $12,200 on her account; (5) under the parties' contracts, plaintiff agreed to provide medical care, and each defendant agreed to pay plaintiff the billed charges, less any amount paid to plaintiff by the defendant's health insurer; (6) plaintiff performed all of its obligations under the contracts; (7) plaintiff sent each defendant a hospital bill after the defendant's health insurer processed payment on the defendant's claim; (8) each defendant breached the contract by refusing and failing to pay the billed charges; (9) plaintiff has been damaged by each defendant's breach of contract in the sum of the full billed charges minus any amounts for which plaintiff has been compensated by the

4

defendant or the defendant's health insurer; (10) plaintiff is entitled to an award of attorney fees and costs pursuant to the terms of the Conditions of Admission contracts; and (11) plaintiff is entitled to an award of prejudgment interest.  (Pl.'s Second Amended Compl. ¶¶ 34-54, 83-96, 117, 120, 124, 193-99 & Exs. A & B.)

Plaintiff's second amended complaint and summons were personally served on defendant Karimi on June 7, 2008 (Doc. No. 233), on defendant Untalan on June 9, 2008 (Doc. No. 231), and on defendant Lee on August 29, 2008 (Doc. No. 266).  The undersigned finds that these three defendants were properly served with the second amended complaint and that the Clerk properly entered the default of these defendants.

Plaintiff's second amended complaint and summons were served several times on defendant Martinez by mail sent to his last known address, which was the address where he had been personally served with plaintiff's first amended complaint and summons on February 25, 2008.  (Pl.'s Request for Entry of Default of Def't Martinez (Doc. No. 292), Decl. of John A. McMahon in Supp. of Request ¶ 5 & Exs. A & B.)  Plaintiff has presented evidence that diligent efforts were made to serve the second amended complaint and summons on defendant Martinez by personal delivery, and extensive efforts were made to locate a new address for plaintiff.  (Id.)

Federal Rule of Civil Procedure 5, which governs the service and filing of pleadings and other papers, provides that "[n]o service is required on a party who is in default for failing to appear," except that "a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."  Fed. R. Civ. P. 5(a)(2).  Plaintiff's first amended complaint was personally served on defendant Martinez on February 25, 2008, under Rule 4. Defendant Martinez did not appear and defend against the first amended complaint and was in default when plaintiff's second amended complaint was filed on May 1, 2008.  A comparison of the pleadings reflects that the same facts are alleged against defendant Martinez in both of them. (Compare First Amended Compl. (Doc. No. 47) ¶¶ 39-49 & 122 with Second Amended Compl. (Doc. No. 177) ¶¶ 34-41 & 117.)  The breach of contract claim at issue in the pending motion for

1   default judgment is identically alleged against plan enrollees, including defendant Martinez, in

2   both pleadings, as the seventh cause of action in the first amended complaint and as the eighth

3   cause of action in the second amended complaint, and the relief sought on that cause of action is

4   the same in both pleadings.  (Compare First Amended Compl. ¶¶ 183-191 & 198 with Second

5   Amended Compl. ¶¶ 191-99 & 207.)

6            Plaintiff's second amended complaint superseded his first amended complaint.

7   See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the

8   original, the latter being treated thereafter as non-existent."); Bullen v. De Bretteville, 239 F.2d

9   824 (9th Cir. 1956) ("It is hornbook law that an amended pleading supersedes the original, the

10   latter being treated thereafter as non-existent.").  Plaintiff's service of the second amended

11   complaint on defendant Martinez pursuant to Rule 5 constitutes sufficient service because the

12   defendant had been personally served with the first amended complaint and was in default with

13   respect to that pleading.  The second amended complaint does not assert a new claim for relief

14   against defendant Martinez such that he must be served under Rule 4.

15            Accordingly, the undersigned finds that all four defendants were properly served

16   with plaintiff's second amended complaint, and their defaults were properly entered by the Clerk

17   of the Court.  Defendants were also served with plaintiff's requests for entry of default and

18   plaintiff's motions for default judgment.  Despite being served with all papers filed in connection

19   with plaintiff's requests for entry of default and its motions for default judgment, defendants

20   Martinez, Lee, Untalan, and Karimi failed to respond to plaintiff's second amended complaint, to

21   plaintiff's requests for entry of default, or to plaintiff's motions for default judgment.  Nor did

22   any defendant appear at the hearing on plaintiff's motions.  The four defendants have failed to

23   participate in this action in any way.

24            After weighing the Eitel factors, the undersigned finds that the material

25   allegations of the second amended complaint support plaintiff's claims.  Plaintiff will be

26   prejudiced if default judgment is denied as to these defendants because plaintiff has already

1   litigated claims against defendants' insurers, employee benefit plans, and/or benefit plan

2   sponsors and has entered into settlements with those parties where possible.  It is not surprising

3   that settlements were not possible in all cases, in that the defendants' insurers had already

4   provided the individual defendants with funds for payment of their hospital bills.  Plaintiff has no

5   other recourse for recovery of the damages suffered due to the four defendants' failure to pay

6   their hospital bills.

7              In light of the entry of default against the four defendants, there is no apparent

8   possibility of a dispute concerning the material facts underlying the action.  Nor is there any

9   indication that any defendant's default resulted from excusable neglect, as each defendant was

10  properly served with one or more of plaintiff's pleadings as well as with plaintiff's request for

11  entry of default and motion for default judgment.  Defendants had ample notice of plaintiff's

12  intent to pursue judgment against them.

13             Although public policy generally favors the resolution of a case on its merits, each

14  defendant's failure to appear and defend against plaintiff's claims has made a decision on the

15  merits impossible in this case.  Because most of the Eitel factors weigh in plaintiff's favor, the

16  undersigned, while recognizing the public policy favoring decisions on the merits, will

17  recommend that default judgment be entered against the four defaulted defendants.

18  II.  Terms of Judgments to Be Entered

19             After determining that entry of default judgment is warranted, the court must next

20  determine the terms of the judgment.  Plaintiff's supplemental brief (Doc. No. 336) has clarified

21  plaintiff's calculation of damages, interest, costs, and fees sought.  Upon consideration of all of

22  plaintiff's briefing, the undersigned will recommend that damages and pre-judgment interest be

23  awarded to plaintiff in the amounts requested in plaintiff's supplemental brief.

24             Plaintiff seeks an award of costs in the amount of $970 and attorney fees in the

25  amount of $24,856.00 from each of the four defendants.  The request is grounded on plaintiff's

26  cause of action against individual enrollees/patients for breach of contract.  The second amended

complaint includes the allegation that plaintiff "is entitled to an award of attorney fees and costs pursuant to the contract stated in the Conditions of Admission." (Pl.'s Second Amended Compl. ¶ 198.) Plaintiff's prayer for relief includes a request, specifically with regard to the cause of action for breach of contract by enrollees/patients, for "an award of attorneys fees per contract" and "costs of suit and other further relief as the court deems just." (Id. ¶ 207.) Each defendant's Conditions of Admission contract provides as follows, under the heading "Financial Agreement":

> All delinquent accounts will be charged a finance charge of 10% per annum. Should the account be referred to an attorney or collection agency for collection the undersigned shall pay actual attorney's fees and collection expenses.

(Pl.'s Mot. for Default J. Against Def't David Martinez (Doc. No. 314), Decl. of Scott Bernasconi, Ex. 3 at 1.)

The undersigned is mindful that the defendants were served with plaintiff's motions for default judgment and were placed on notice of the amounts sought by plaintiff for attorney fees and costs. However, granting or denying default judgment is within the court's sound discretion, and one of the factors the court is free to consider in exercising its discretion is the sum of money at stake. The undersigned finds that the amounts sought for attorney fees and costs exceed the actual expenses contemplated by the contracts at issue.

The declarations of Scott Bernasconi in support of the default judgment motions, one of which is cited supra, indicate that plaintiff's total costs in this action are "well in excess of $15,000" and that plaintiff has incurred "$300,000 - plus in legal fees" in this case. (Bernasconi Decl. ¶¶ 18-19.) These amounts are not documented in plaintiff's motion, but plaintiff seeks to obtain $3,880 (four times $970), i.e., approximately 26% of the total costs incurred, and $99,424 (four times $24,856), i.e., approximately 33% of the total legal fees, from four enrollee/patient defendants in a case that was commenced on June 22, 2007 and ultimately involved over sixty defendants, according to the court's docket.

/////

1    No individuals were named as defendants in plaintiff's original complaint.

2    (Notice of Removal of Action by Def't Cal. Physicians' Svc. dba Blue Shield of Ca. (Doc. No.

3    1), Ex. B.)  Although plaintiff's state court complaint named defendants DOES 1-100, the

4    pleading identified such defendants as unknown parties responsible in some manner for the

5    wrongful acts and damages alleged by plaintiff.  (Id., Ex. B ¶ 13.)  Obviously, the patients who

6    had not paid their bills were not unknown to plaintiff, which suggests that plaintiff did not

7    initially contemplate joining enrollees/patients as defendants.  That inference is supported by

8    removing defendant's summary of plaintiff's state court complaint:

9           Plaintiff alleges that it at one time contracted with Blue Shield of
            California for processing and payment of Plaintiff's hospital
10          charges within the Blue Shield network.  It also alleges that it
            requires all of its patients to sign a Conditions of Admission
11          Agreement that includes the written assignment of the patient's
            health plan benefits to Dameron.  Plaintiff alleges that after
12          cancellation of the contract with Blue Shield of California, all
            Defendants were required to pay the full billed rate rather than the
13          previously contracted, allegedly discounted rate.  Plaintiff
            furthermore alleges that Defendants have retaliated against Plaintiff
14          for its refusal to contract with Blue Shield of California by paying
            Plaintiff's claims to the health plan members who incurred the
15          charges rather than to Plaintiff directly, and/or by paying less than
            the full amount billed.
16

17   Id. at 2-3 (citations omitted).  Defendants Martinez and Lee, along with other "plan

18   enrollees/patients," were joined as defendants in plaintiff's first amended complaint, filed

19   November 20, 2007.  Defendant Martinez was personally served with the first amended

20   complaint on February 25, 2008, and defendant Lee was served by substituted service on

21   February 27, 2008.  Defendants Untalan and Karimi, along with other "plan enrollees/patients,"

22   were joined as defendants in plaintiff's second amended complaint, filed May 1, 2008.

23   Defendants Karimi and Untalan were personally served with the second amended complaint on

24   June 7, 2008, and June 9, 2008, respectively.

25   /////

26   /////

A.  Costs

      The amount of $970 requested for costs from each of the four defendants consists of $320 for the filing fee, $100 for copies, $50 for mailings (including overnight delivery), $400 for service of process (the first and second amended complaints), and $100 for a share of the travel expenses (airplane, rental car, and lodging) incurred by the attorneys who appeared at the hearing.

      Plaintiff paid a single filing fee of $320 in state court but seeks to charge each of the four defaulted defendants for the full amount of that fee.  An award of $320 for the filing fee against each defendant does not constitute an "actual" collection expense.  The undersigned will recommend that each defendant be assessed a share of the fee based on the total number of defendants in the case.  One sixtieth of $320 is approximately $5.

      A total of $400 for copying and mailing expenses appears to be excessive for four defendants who were not involved in the case from the beginning and were not served with all documents in the case.  It is unlikely that these defendants were served with any document by overnight delivery.  In the absence of documentation that would enable the court to determine actual expenses or an appropriate amount attributable to each defendant, the undersigned will recommend no award of costs for copying and mailing expenses.

      The request for $400 for service of process as to each of the four defendants is plainly excessive since two defendants were served only with the second amended complaint.  Moreover, the record contains documentation of the actual amounts charged for service of process.  The proofs of service filed by plaintiff reflect that the fees for service of process on defendant Martinez were $137.50  for the first amended complaint and $175 for the second amended complaint; the fees for service of process on defendant Lee were $137.50 for the first amended complaint and $175 for the second amended complaint; the fees for service of process on defendant Karimi were $150 for the second amended complaint; the fees for service of process on defendant Untalan were $150 for the second amended complaint.  (Doc. Nos. 148,

153, 231, 233, 266.)  The undersigned will recommend that plaintiff be awarded "actual collection expenses" for service of process as follows:  $312.50 for defendant Martinez; $312.50 for defendant Lee; $150 for defendant Karimi; and $150 for defendant Untalan.

With respect to travel expenses, plaintiff seeks $100 from each defendant as one sixth of the estimated expense of $600 for airfare, rental car, and lodging.[1]  The court has not been provided with documentation of the actual expense.  Two attorneys made personal appearances at the hearing on the pending motion.  In light of the fact that counsel were advised by chambers staff prior to the hearing that telephonic appearance was available, the undersigned will recommend that no award be made for travel expenses.

The undersigned will recommend that the total award of costs consist of the actual fees incurred for service of process on each defaulted defendant and $5 for a portion of the filing fee, as follows:

| | |
|---|---|
| David Martinez | $317.50 ($5.00 for filing fee and $312.50 for service of process) |
| Margaret Lee | $317.50 ($5.00 for filing fee and $312.50 for service of process) |
| Zarghoona Karimi | $155.00 ($5.00 for filing fee and $150.00 for service of process) |
| Jayson Untalan | $155.00 ($5.00 for filing fee and $150.00 for service of process) |

B.  Attorney Fees

As noted above, plaintiff seeks approximately a third of its total legal fees from the four defaulted defendants.  As set forth supra, plaintiff seeks attorney fees pursuant to the contract, and the contract authorizes only "actual attorney's fees."

Plaintiff's four motions for default judgment were not supported by  memoranda of points and authorities, and plaintiff's supplemental brief does not cite legal authority that supports an award of attorney fees far in excess of an individual defendant's proportionate share of plaintiff's legal fees under a contract that authorizes "actual attorney's fees."

/////

---

[1]  Plaintiff initially filed six motions for default judgment but entered into agreements with two defendants and therefore proceeded on only four of the motions.

11

1    In declarations filed in support of plaintiff's motions, one of plaintiff's attorneys

2 concedes that this lawsuit involved numerous defendants and claims, but he asserts that the

3 attorney fees requested is a reasonable amount because he reviewed all of the attorney fee bills

4 and omitted entries that did not directly involve the individual patient defendants, the pleadings,

5 or the trial setting schedule, arriving at a figure of $149,136.32 as the attorney fees "directly

6 associated with the individual patients." (Pl.'s Mot. for Default J. Against Def't David Martinez

7 (Doc. No. 314), Decl. of John A. McMahon ¶¶ 16, 20.)  This amount was split among the six

8 defendants against whom motions for default judgment had been filed, for a proposed award of

9 $24,856 in attorney fees against each defaulted defendant.  (Id., McMahon Decl. ¶ 20.)

10    Counsel argues that the proposed amount "is reasonable because it focuses only

11 on fees and costs that are related to Dameron's enforcement of this lawsuit that are relevant to

12 Mr. Martinez, and only for his share of the fees with respect to the remaining defaulted patient

13 defendants." (Id., McMahon Decl. ¶ 21.)  Counsel offers the following rationale:

14
> Dameron was forced to file this costly lawsuit because defendant
> patients such as Mr. Martinez refused to turn over money owed to
15 > Dameron that was paid to them by their health plan.  Instead,
> individual patient defendants such as Mr. Martinez reaped five and
16 > even six-figure windfalls,[2] despite their contractual obligation to
> pay for their hospital care.  In the absence of Mr. Martinez's and
17 > other's [sic] misconduct, Dameron would not have incurred *any* of
> the $300,000 - plus in legal fees in this case.  As the "sine qua non"
18 > of this lawsuit, Mr. Martinez is responsible for *all* of the fees
> incurred herein.
19

20 (Id., McMahon Decl. ¶ 19 (italics in original.)  Plaintiff reiterates this argument in its

21 supplemental brief, asserting that the amount sought "is reasonable because *the misconduct of the*

22 *patient defendants is the very reason this lawsuit was initiated*" and that this lawsuit would never

23 have occurred if the patient defendants had paid plaintiff the funds paid to them by their insurers.

24 (Pl.'s Supplemental Brief at 9 (italics in original).)  Plaintiff concludes that "[o]ther patient

25
_____
26      [2] Defendant Lee did not reap a five or six-figure windfall.  Her billed charges for care on
July 25, 2007, were $6,570.33.

1  defendants have either paid Dameron, or their insurers have done so," leaving the four defaulted

2  defendants as "the *most* culpable defendants in this case." (Id.)

3          The undersigned finds plaintiff's arguments unpersuasive.  The assertion that "the

4  misconduct of the patient defendants is the very reason this lawsuit was initiated" is contradicted

5  by the claims alleged solely against entity defendants in the complaint filed in the state court.

6  Patients were joined as defendants only later by plaintiff.  The court's docket shows 25 individual

7  defendants.  Presumably, each of these defendants signed the same contract that provides for

8  attorney fees if a delinquent account is referred to an attorney.  The four defaulted defendants do

9  not appear to be more culpable than the other twenty-one defendants whose delinquent accounts

10 were referred to an attorney for collection, thereby entitling plaintiff to actual attorney fees

11 incurred in collecting their accounts.

12          The undersigned is not entirely persuaded by plaintiff's conclusion that

13 approximately half of the legal fees incurred in the entire litigation are attributable to the

14 individual defendants.  However, plaintiff is entitled to attorney fees pursuant to the contracts

15 signed by all of the patient defendants.  The undersigned will recommend that plaintiff be

16 awarded an amount against each defaulting defendant equal to 1/25 of the $149,136.32 calculated

17 by plaintiff as attributable to the patient defendants.  That amount is $5,965.45.

18          C.  Summary of Recommended Terms of Default Judgment

19          The undersigned finds that judgment should be entered against the defaulted

20 defendants in the following amounts:

21      **David Martinez**                    **$61,629.48**

22              $43,409.04 in damages
            $11,937.49 in interest
23          $    317.50 in costs
            $ 5,965.45 in attorney fees
24 /////

25 /////

26 /////

**Margaret Lee**          **$13,510.31**

    $6,570.33 in damages
    $  657.03 in interest
    $  317.50 in costs
    $5,965.45 in attorney fees

**Jayson Untalan**        **$17,821.83**

    $7,148.00 in damages[3]
    $4,553.38 in interest
    $  155.00 in costs
    $5,965.45 in attorney fees

**Zarghoona Karimi**      **$16,320.45**

    $9,000.00 in damages[4]
    $1,200.00 in interest
    $  155.00 in costs
    $5,965.45 in attorney fees

CONCLUSION

In accordance with the above, IT IS ORDERED that within five days after these findings and recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on each defaulted defendant by mail at the address where service of process was effected, or at any more recent address known to plaintiff, and shall file a proof of such service; and

/////

/////

/////

---

[3] Jason Untalan's billed charges were $36,427.01. Plaintiff was paid $5,000.00 by defendant Untalan's insurer, and the settlement agreement with the insurer provides that plaintiff's ability to pursue defendant Untalan is limited to $12,148.00, offset by the $5,000.00 paid by the insurer.

[4] Zarghoona Karimi's billed charges were $12,798.00. Plaintiff was paid $798.00 by defendant Karimi and $3,000.00 by defendant Karimi's insurer pursuant to a settlement agreement.

IT IS RECOMMENDED that:

1. Plaintiff's December 31, 2008 motion for default judgment against defendant David Martinez (Doc. No. 314) be granted and judgment be entered against David Martinez and in favor of Dameron Hospital in the sum of $61,629.48, as follows:

        a. $43,409.04 in damages;
        b. $11,937.49 in interest;
        c. $    317.50 in costs;
        d. $ 5,965.45 in attorney fees.

2. Plaintiff's December 31, 2008 motion for default judgment against defendant Margaret Lee (Doc. No. 315) be granted and judgment be entered against Margaret Lee and in favor of Dameron Hospital in the sum of $13,510.31, as follows:

        a. $6,570.33 in damages;
        b. $  657.03 in interest;
        c. $  317.50 in costs;
        d. $5,965.45 in attorney fees.

3. Plaintiff's December 31, 2008 motion for default judgment against defendant Jayson Untalan (Doc. No. 317) be granted and judgment be entered against Jayson Untalan and in favor of Dameron Hospital in the sum of $17,821.83, as follows:

        a. $7,148.00 in damages;
        b. $4,553.38 in interest;
        c. $  155.00 in costs;
        d. $5,965.45 in attorney fees.

4. Plaintiff's December 31, 2008 motion for default judgment against defendant Zarghoona Karimi (Doc. No. 318) be granted and judgment be entered against Zarghoona Karimi and in favor of Dameron Hospital in the sum of $16,320.45, as follows:

        a. $9,000.00 in damages;
        b. $1,200.00 in interest;
        c. $  155.00 in costs;
        d. $5,965.45 in attorney fees.

5. This case be closed.

15

1    These findings and recommendations will be submitted to the United States

2 District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

3 ten (10) days after these findings and recommendations are filed, any party may file written

4 objections with the court.  A document containing objections should be titled "Objections to

5 Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be served

6 within five (5) days after service of the objections.  The parties are advised that failure to file

7 objections within the specified time may waive the right to appeal the District Court's order.  See

8 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9 DATED: September 11, 2009.

10

11    _____

12    DALE A. DROZD
      UNITED STATES MAGISTRATE JUDGE

13 DAD:kw
   Ddad1\orders.civil\dameron1818.mdj.f&r

14

15

16

17

18

19

20

21

22

23

24

25

26